**UNITED STATES DISTRICT COURT**
**FOR THE** Western District of Wisconsin

Nakreisha McFarland (guardian) and
Minor McFarland One (minor) and
Minor McFarland Two (minor)
Minor McFarland Three (minor)
Minor McFarland 4 (minor)

-Plaintiff(s)

Case No:      **20 CV 583 WMC**

vs.

F.R.C.P. 65 and 42 U.S.C. § 1983 and
Section 8 of the Housing Act of 1937 (42 U.S.C.
§ 1437(f)
**Notice of Motion and Motion For Preliminary
Injunction, Permanent Injunction and
Declaratory Relief**

Housing Authority of Racine County and
Michael Schattner

-Defendant(s)

---

**Complaint For Preliminary Injunction, Permanent Injunction and Declaratory
Relief**

---

NOW COME the above-named Plaintiffs, **Nakreisha McFarland** (a guardian of
two disabled minors and two other minors), **Minor McFarland 1, Minor
McFarland 2, Minor McFarland 3 and Minor McFarland 4**, by her attorneys,
STROUSE LAW OFFICES, and brings a Complaint against the above captioned
Defendant(s), Housing Authority of Racine County ("HARC") and **Michael
Schattner** the landlord for a Preliminary Injunction, Permanent Injunction and
Declaratory Relief.

That Plaintiff **Nakreisha McFarland** is a single mother of two minor children
**Minor McFarland One** and **Minor Mc Farland Two** suffer from disabilities and
**Minor McFarland One** is a severely disabled child who is fed through a feeding
tube due to physical defects of his body. **Minor McFarland Two** is a minor child
who has emotional and behavioral disabilities. The Plaintiffs have been long-
term residents at 1244 Geneva Street Racine WI 53404 since 2009. Plaintiffs were

1

denied were summarily excluded from the Section * Housing Voucher Program and received a 28 Day Notice to vacate without receiving a Due Process Hearing.

Plaintiffs individually will move the Court pursuant to Rule 65 of the Federal Rules of Civil Procedure and Rule 65-1 of the Civil Local Rules for a preliminary injunction, permanent injunction and for declaratory relief enjoining Defendant(s) and their successors, agents, officers, servants, employees, attorneys and representatives and all persons acting in concert or participating with them, from denying Plaintiffs relief under the Federal Section 8 Voucher Program Section 8 of the Housing Act of 1937 (42 U.S.C. § 1437(f) and the provisions of The Housing Authority of Racine County Section 8 Administrative Plan Section, by 42 U.S.C. 1983.

This Motion is made on the ground that Plaintiffs seek a preliminary injunction, permanent injunction and declaratory relief enjoining Defendant **HARC** from terminating of a (Section 8) housing voucher which, unless enjoined, will cause immediate and irreparable harm by placing Plaintiffs at imminent and serious risk of harm to their health and safety.

The balance of equities strongly favors Plaintiffs because Defendants' interest is both fiscal and retaliatory, whereas the Plaintiffs face potential life threatening consequences to **Minor McFarland One** physically disabled child and the specter of homelessness to all Plaintiffs which also includes a second child, **Minor McFarland Two** with emotional and behavioral disabilities.

## PARTIES

1. That **Nakreisha McFarland** is a real and natural person and is a resident of the State of Racine County Wisconsin with a domicile at 1244 Geneva Street Racine WI 53404 and is a Plaintiff to this current action.

2. That **Minor McFarland 1** is a real and natural person and a severely physically disabled minor and is a resident of the State of Racine County Wisconsin with a domicile at 1244 Geneva Street Racine WI 53404 and is a Plaintiff to this current action.

3. That **Minor McFarland 2** is a real and natural person and a disabled minor with emotional and behavioral disabilities and is a resident of the State of Racine County Wisconsin with a domicile at 1244 Geneva Street Racine WI 53404 and is a Plaintiff to this current action.

2

4. That the **Housing Authority of Racine County** ("HARC") is a municipal entity located at 837 Main Street Racine WI 53403.

5. That **Michael Schattner** is a property owner, with an office address of 8117 Arden Road Racine WI 53406, who owns the property located at 1244 Geneva Street Racine WI 53404.


## FACTS

6. That at all times material hereto **Nakreisha McFarland** and her minor children **Minor McFarlands 1-4** ("Plaintiffs") were residents of a property located at 1244 Geneva St. Racine WI 53404.

7. That at all times material hereto Plaintiffs were eligible for Section 8 House Choice Voucher Program (HCV) under the Housing Act of 1937 (42 U.S.C. § 1437(f) ("Section 8") and administered by **HARC.**

8. That the owner of the Geneva Street property is **Michael Schattner.**

9. That at all times material hereto and since on or about 2009  the Plaintiffs were defined as "Participants" as those terms are defined under 24 CFR 982.4(b).

10. That at all times material hereto **Minor McFarland One** is a severely disabled child who is fed through a feeding tube due to physical defects of his body.

11. That **Minor McFarland Two** is a minor child who has emotional and behavioral disabilities.

12. That at all times material hereto **HARC** and **Michael Schattner** had proper Notice and/or actual knowledge that **Minor McFarland One** is a severely disabled child who is fed through a feeding tube due to physical defects of his body.

13. That on or before June 20th, 2018 and then again on July 24th 2018 (and at other times material hereto) **Nakreisha McFarland** requested an inspection of her residence by **HARC** due to a suspected unsafe and hazardous condition, namely issues with the foundation of the structure.

14. That about the same time that **Nakreisha McFarland** made the inspection request to **HARC** for the dangerous condition(s) at the home, **HARC** demanded

3

that **Nakreisha McFarland** be recertified for eligibility for her families Section 8 voucher.

15. That on June 20th, 2018 **Nakreisha McFarland** went to **HARC** and demanded to speak with **HARC** executive director Linda Weber regarding the deviation from her regularly scheduled Section 8 voucher recertification.

(Attached hereto as Exhibits 1 and 2 are true and accurate copies of the documents pertaining to Plaintiffs recertification **Nakreisha McFarland** received from **HARC** and 5/24/2018 Authorization for the Release of Information and Declaration of citizenship minors names redacted).

16. That June 20th, 2018 **Nakreisha McFarland** was unable to meet with Linda Weber Executive Director **HARC** and left correspondence with **HARC** which in part stated,

   a. "I wasn't up for recertification until August 1st which is very unusual. Why was the inspection done so early which had never been done early since I been on housing"

   b. That same day **Nakreisha McFarland** left correspondence stating,

   (Attached hereto as Exhibit 3A is a true and accurate copy of the June 20th, 2018 correspondence).

17. That soon thereafter **Nakreisha McFarland's** landlord **Michael Schattner** paid her a visit and demanded she move out of the Geneva Street home.

18. That soon thereafter on June 21st, 2018 **HARC** sent **Nakreisha McFarland** a recertification letter also stated in part:

   a. Investigation: "An allegation that an unauthorized person was living in your unit was received. The allegation was turned over to Investigators … and they investigated the allegation. Their investigation was inconclusive and further action was taken."

   (Attached hereto as Exhibit 4 is a true and accurate copy of the June 20th, 2018 correspondence).

19. That soon thereafter on June 26th, 2018 **HARC** sent **Nakreisha McFarland** a Contract Amendment Notice.

(Attached hereto as Exhibit 4A is a true and accurate copy of The Contract Amendment Notice).

20. That soon thereafter on July 24th, 2018 **Nakreisha McFarland** again went to **HARC** and left correspondence with **HARC.**

    a. "Today my landlord as well stopped by the house and stated to me that if I didn't move out he was going to give me a 28 Day Notice by Sept to move"

       (Attached hereto as Exhibit 5 is a true and accurate copy of the June 20th, 2018 correspondence).

21. That on or about July 29th, 2018 **Nakreisha McFarland** went to the Racine City Health Department and requested an inspection of the 1244 Geneva Street address.

22. That on July 13th 2018 **Nakreisha McFarland** again went to **HARC** and left correspondence with **HARC** stating:

    a. "I am requesting for an increase (accommodation") in my rent to exceed the amount of 1400 so that I can have enough space and room for my childrens. Especially my disabled son would need enough space for his wheelchair and intro supplies for his 6 tube feedings. Also need room in front of my house … so there won't be any tough situation getting him in and out of the house … Can my housing department provide my family with a ramp?"
(Attached hereto as Exhibit 6 is a true and accurate copy of correspondence).

23. That on July 31st 2018 **Nakreisha McFarland** again went to **HARC** and left correspondence with **HARC** stating:

    a. "Yesterday which was Monday morning around 10:30 I came down to the City Health Department to request them to inspect my unit at 1244 Geneva St. which me and my 5 children reside. My request was to have someone come and inspect my unit because my foundation in my basement is about to cave in. Which it has been for the last 6 years. My landlord…is aware of this as well"

    b.

       (Attached hereto as Exhibit 7 is a true and accurate copy of correspondence).

24. That soon thereafter on July 30th, 2018 the Executive Director of **HARC** sent **Nakreisha McFarland** correspondence which stated:

   a. "I am writing this letter, at your request, to confirm that I am in receipt of the 28 Day Notice Terminating Tenancy, issued to you by your landlord, Michael Schattner."
   (Attached hereto as Exhibit 8 is a true and accurate copy of correspondence).

25. That soon thereafter on July 30th, 2018 **Nakreisha McFarland** was served with a "28 Day Notice Terminating Tenancy."

   (Attached hereto as Exhibit 9 is a true and accurate copy of the 28 Day Notice).

26. That upon information and belief it was **Michael Schattner** who pressured **Nakreisha McFarland** to sign a "Notice to Move" form. What is telling is that **Michael Schattner** made it appear as though the Notice to Move was "in the works" long before **Nakreisha McFarland** complained about the dangerous conditions at the Geneva Street unit by signing the document on 5/29/2018. However, both **Nakreisha McFarland** and **HARC** indicate (by date stamp and/or signature) that the Notice of Move was created in early August, after **Nakreisha McFarland** complained of said dangerous conditions and requested an inspection of the Geneva Street Property.

   (Attached hereto as Exhibit 9A is a true and accurate copy of the Notice to Move).

27. That concurrently on August 2nd, 2018 **HARC** issued **Nakreisha McFarland** a Housing Voucher.

   (Attached hereto as Exhibit 9B is a true and accurate copy of the Housing Voucher).

28. That concurrently on August 2nd 2018 the City of Racine Building Inspection Department-Code Enforcement Division sent **Michael Schattner** correspondence which stated:

   a. 1) The brick foundation of this residence is in need of tuckpointing in areas around the building and must be repaired...It has also come to the attention of this office that the interior side of one foundation wall is bowing and in disrepair. Please have a structural engineer or architect inspect this wall to determine if it is structurally sound."

6

(Attached hereto as Exhibit 10 is a true and accurate copy of the inspection report).

29. That on 8/23/2018 **Nakreisha McFarland** having been "brow-beaten" by **Michael Schattner** and **HARC** executed an Applicant/Tenant Request for Portability. **Nakreisha McFarland** wanted to remain at the Geneva Street unit and simply wanted a dangerous condition remedied. Instead she had the rug pulled out from under her and had to cover herself by signing said document.

(Attached hereto as Exhibit 11 is a true and accurate copy of Applicant/Tenant Request for Portability).

30. That on or before August 24th, 2018 The Executive Director of **HARC** responded to **Nakreisha McFarland's** June 26th 2018 request for copies of her Section 8 file. The **HARC** correspondence stated:

    a. I am enclosing the information that you had requested that I was unable to find in your file: the original voucher, lease and contract from 2009 when you lease up on Geneva Street. I have no copy or record of a lease signed in 2018.

    (Attached hereto as Exhibit 12 is a true and accurate copy of correspondence, See Also HUD Documents ).

31. That on September 17th, 2018 **Nakreisha McFarland** again went to **HARC** and left correspondence with **HARC** stating:

    a. "**Nakreisha McFarland** am requesting from Linda Weber to have her put in writing that **Michael Schattner** in which is my landlord that he give me proper notice to sufficient time from requesting me to move out of his property. I myself gave proper notice ... She (Linda Weber) should provide that in writing to me the reason why ... Mickey Shattner my landlord has to have a valid reason to properly evict me"

    (Attached hereto as Exhibit 13 is a true and accurate copy of correspondence).

32. That soon thereafter on October 11th, 2018 the Deputy Executive Director of **HARC** sent **Nakreisha McFarland** correspondence which stated:

    a. Your voucher was to expire in 60 Days or October 30, 2018. It is the policy of the Housing Authority of Racine County to give no extentions except where regulations require a person with disabilities to be granted an

7

extension to accommodate their disability ... As you do not qualify for an extension under the policy, we deny your request..."

(Attached hereto as Exhibit 14 is a true and accurate copy of correspondence).

33. That soon thereafter on November 26th, 2018 the Executive Director of **HARC** sent **Nakreisha McFarland** correspondence which stated:

   a. "I received the letter you left for me on November 20, 2018, and I have reviewed your file extensively. On October 11 2018, a letter was sent to you denying your request for a voucher extension and explaining to you that your voucher expired on October 30th, 2018....I am considering this case closed as there is nothing else that the Housing Authority can do for you at this time. The HARC staff have also been instructed by me that all communications with you are to be documented, and your interruptions and demands to speak with someone that you do not have an appointment with will not be tolerated"

   (Attached hereto as Exhibit 15 is a true and accurate copy of correspondence).

34. That at no time was **Nakreisha McFarland** actually given a due process hearing by **HARC**.

### COUNT 1
### Preliminary Injunction

35. That Plaintiffs incorporate and reallege Counts 1-34 as though fully set out herein.

36. That Plaintiffs are defined as "Participants" under the **HARC** Section 8 Voucher Program, as those terms are defined under 24 CFR 982.4:

"Participant (participant family). A family that has been admitted to the PHA program and is currently assisted in the program. The family becomes a participant on the effective date of the first HAP contract executed by the PHA for the family (first day of initial lease term)."

8

37. That Plaintiffs face *irreparable injury* should they be forced to move out of the 1244 Geneva Street address:

   a.   Most notably, **Minor McFarland One** is a severely disabled child who is fed through a feeding tube due to physical defects of the body. Moving **Minor McFarland One** or leaving the child homeless could result in severe or even catastrophic injury.

   b.   Furthermore, the 28 Day Notice was sent to Plaintiffs soon after they requested the dangerous conditions at the Geneva Street unit be remedied and appears to be made in retaliation to that request. The Plaintiff's have been removed from the Section 8 voucher program as a result and face imminent homelessness should they be forced to vacate the premises.

38. That injury to Plaintiffs *is imminent, not speculative:*

   a.   That Plaintiff's Section 8 Housing Voucher has been terminated pursuant to the landlords 28 Day Notice, notably, **Minor McFarland One** is a severely disabled child who is fed through a feeding tube due to physical defects of the body. Moving **Minor McFarland One** or leaving the child homeless could result in severe or even catastrophic injury.

   b.   That all other Plaintiffs face imminent homelessness should they be forced to move.

39. That the injury to the Plaintiffs would constitute *more than a monetary injury:*

   a.   That Plaintiff's Section 8 Housing Voucher has been terminated pursuant to the landlords 28 Day Notice, notably, **Minor McFarland One** is a severely disabled child who is fed through a feeding tube due to physical defects of the body. Moving **Minor McFarland One** or leaving the child homeless could result in severe or even catastrophic injury.

   b.   That all other Plaintiffs face imminent homelessness should they be forced to move.

40. That **HARC** had given Plaintiffs *no adequate remedy at law:*

   a.   That Plaintiffs will be forced to move in the dead of winter with no Section 8 voucher and as such face becoming homeless with two young disabled children in the family;

   b.   That at no time did **HARC** give Plaintiffs proper Due Process hearing.

9

c.  That neither **HARC** nor **Michael Schattner** have provided an adequate remedy at law other than suggesting to **Nakreisha McFarland** "You may re-apply for assistance the next time the Housing Authority of Racine County opens the waiting list, and like everyone else, your application will be reviewed when your name is at the top of the list"  .

(attached hereto as Exhibit is a true and accurate copy of **HARC** correspondence to **Nakreisha McFarland** dated November 26, 2018.)

41. That the Plaintiffs lawsuit has a *substantial likelihood of success on the merits*:

a.  That in a July 30ᵗʰ, 2018 correspondence from **HARC** to **Nakreisha McFarland**, **HARC** stated "I am in receipt of a copy of the 28 Day Notice Terminating Tenancy, issued to you by your landlord, **Nakreisha McFarland**. We met briefly and you requested I put in writing that it is my understanding that you are on a month to month lease which allows the landlord to terminate tenancy with notice."

b.  That in a July 30ᵗʰ, 2018 correspondence from **HARC** to **Nakreisha McFarland**, **HARC** stated, "It is the policy of the Housing Authority of Racine County to give no extensions except where regulations require a person with disabilities to be granted an extension to accommodate their disability"

**Administrative Policy of the Housing Authority of Racine County:**

**6.4    TERM OF THE HOUSING CHOICE VOUCHER**
...
**The Housing Authority may grant one or more extensions of the term, but the initial term plus any extensions will not exceed 120 calendar days from the initial date of issuance without an extraordinary reason. To obtain an extension, the family must make a request in writing prior to the expiration date. It is the policy of the Housing Authority of Racine County to give no extensions except to provide an accommodation for a person with a disability.**

c.  Plaintiff's Section 8 Voucher was terminated for none of the grounds set out in 24 C.F.R. §982.551, §982.552, §982.553 (see Plaintiff's Brief for further discussion). These are the only grounds on which the Plaintiff's Section 8 Voucher could be terminated.

10

d. Moreover, **HARC** violated 24 C.F.R. 982.303(b)(2) its own Administrative policy, which sets out in sec. 6.4 that, "It is the policy of the Housing Authority of Racine County to give no extensions except to provide an accommodation for a person with a disability." **HARC** has violated its own policy by not granting an extension in light of **Minor McFarland One** who is a severely disabled child who is fed through a feeding tube due to physical defects of the body. Moving **Minor McFarland One** or leaving the child homeless could result in severe or even catastrophic injury. Also **Minor McFarland Two** also has psychological and behavioral disability, which Defendants did not consider.

42. That in looking at the *balance of hardships* it would be difficult to argue that the modest amount of money and administrative inconvenience a preliminary injunction would cost the Defendants outweighs the injury Plaintiffs would suffer should they have to move or become homeless since, **Minor McFarland One** is a severely disabled child who is fed through a feeding tube due to physical defects of the body. Moving **Minor McFarland One** or leaving the child homeless could result in severe or even catastrophic injury. Also **Minor McFarland Two** also has psychological and behavioral disability, which Defendants did not consider.

43. That granting a preliminary injunction would have *no adverse effect on public interest*. According to HUD regulations, the goal of the Section 8 program is to assist low-income families in obtaining decent, safe, and sanitary housing. *See 24 C.F.R. 982.1(a)*. In light of its worthy purpose it seems entirely reasonable to construe the program liberally in favor of those whom it seeks to serve. Surely the public interest would not be disserved by granting an injunction which would not force Plaintiffs who have disabilities into homelessness.

**Count 2**
**Declaratory Relief and Permanent Injunction**

44. That Plaintiffs incorporate and reallege Counts 1-34 as though fully set out herein.

45. Since § 1437f(o) does not create an express or implied right of action to sue for wrongful termination, plaintiffs must seek relief under § 1983.

46. In relevant part, the Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law." Claims

under this provision have been a staple of Section 1983 legal doctrine for many years. Procedural due process addresses the right to notice and hearing before (or after) particular deprivations can take place. Substantive due process concerns governmental deprivations of life, liberty, or property stemming from particularly outrageous governmental actions.

47. That the Plaintiffs Section 8 housing voucher participants have a property interest in their Section 8 housing voucher.  See Chesir v. Housing Authority of the City of Milwaukee, 801 F. Supp. 244, 247-48 (E.D. Wis. 1992).

48. That **HARC** made no determination that Plaintiff's Section 8 Voucher was to be terminated either under 24 CFR 982.552 or 24 CFR.553.

49. That since **HARC** made no determination that Plaintiff's Section 8 Voucher was to be terminated either under 24 CFR 982.552 or 24 CFR.553, its denial was illegal.   See, e.g., Ellis v. Ritchie, 803 F. Supp. 1097, 1101 (E.D. Va. 1992) ("Termination decisions must be made in accordance with these regulations.").

50. That **HARC** under 24 CFR 982.303(b)(2) and under Sec. 6.4 of the Administrative Policy of the Housing Authority of Racine County did not grant an extension of the voucher term for a family member who is a person with disabilities, the PHA must extend the voucher term up to the term reasonably required for that purpose:

> **§ 982.303 Term of voucher.**
> (b)Extensions of term.
>
> (2) If the family needs and requests an extension of the initial voucher term as a reasonable accommodation, in accordance with part 8 of this title, to make the program accessible to a family member who is a person with disabilities, the PHA must extend the voucher term up to the term reasonably required for that purpose.

51. Here, **Minor McFarland One** is a severely disabled child who is fed through a feeding tube due to physical defects of the body. Moving **Minor McFarland One** or leaving the child homeless could result in severe or even catastrophic injury. Also **Minor McFarland Two** also has a psychological and behavioral disability. No extension was provided to Plaintiffs voucher term was offered by **HARC** at all and **HARC's** termination of Plaintiff's Section 8 voucher was unreasonable.

12

## Prayer For Relief

52. That Plaintiffs incorporate and reallege Counts 1-51 as though fully set out herein

53. That the Plaintiff's have a property right in the Section * Voucher.

54. That the failure to extend Plaintiff's Section 8 Voucher, violates the Plaintiffs' rights under the HUD regulations that implement the U.S. Housing Act under 24 CFR 982.303(b)(2) and under Sec. 6.4 of the Administrative Policy of the Housing Authority of Racine County, specifically that the **HARC** did not grant an extension of the voucher term for a family member who is a person with disabilities.

55. That the **HARC** must extend the voucher term up to the term reasonably required for that purpose.

56. That the **HARC** is to be barred from denying the Plaintiffs Section 8 Voucher.

57. That a permanent injunction enjoining the defendant from continuing to refuse to extend the plaintiffs' Section 8 vouchers for the balance of time that is appropriate for each plaintiff under the regulations.

58. For reasonable attorney's fees and treble damages under the applicable section(s) of 42 U.S.C. 1983

Dated this _6_ of ___24___ 2020

pro se · litigation

Nakresha Myfaton

1724 Howe street

Racine, WI 63403

13